# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **CAMPGROUP LLC; MAH-KEE-NAC OPERATING CO., LLC; MAH-KEE-NAC REAL ESTATE CO., LLC;**<br>　　　　　Plaintiffs<br><br>　v.<br><br>**BENJAMIN MOORE & CO.,**<br>　　　　　Defendant | **Civil Action No.**<br><br><br>**JURY DEMANDED** |

## COMPLAINT

Plaintiffs hereby demand judgment against the above-named Defendant and, in support thereof, allege the following:

## PARTIES

1.　　CampGroup LLC is a business entity organized and existing under the laws of the State of New York with its principal place of business located at 4 New King Street, Suite 130, White Plains, NY 10604.  At all times relevant hereto, CampGroup LLC was in the business of providing overnight summer camp and day camp experiences.

2.　　Mah-Kee-Nac Operating Co., LLC, is a business entity organized and existing under the laws of the State of New York with its principal place of business located at 4 New King Street, Suite 130, White Plains, NY 10604.  At all times relevant hereto, Mah-Kee-Nac Operating Co., LLC, was the operator of the business of providing overnight summer camp and day camp experiences at 6 Hawthorne Road in Lenox, Massachusetts 01262.  Mah-Kee-Nac Operating Co., LLC, is owned by CampGroup LLC.

3.　　Mah-Kee-Nac Real Estate Co., LLC, is a business entity organized and existing under the laws of the State of New York with its principal place of business located at 4 New King

Street, Suite 130, White Plains, NY 10604.  At all times relevant hereto, Mah-Kee-Nac Operating Co., LLC, was in the business of owning and managing the property located at 6 Hawthorne Road in Lenox, Massachusetts 01262.  Mah-Kee-Nac Real Estate Co., LLC, is owned by CampGroup LLC.

4. At all times relevant hereto, Defendant, Benjamin Moore & Co. (hereinafter "Benjamin Moore") was, upon information and belief, a New Jersey corporation with its principal place of business at 101 Paragon Drive, Montvale, New Jersey 07645, and was registered and authorized to do business within the Commonwealth of Massachusetts.

5. Upon information and belief, Benjamin Moore is in the business of, *inter alia*, designing, assembling, manufacturing, selling, distributing and/or marketing wood stains.

6. Upon further information and belief, Defendant undertakes a significant amount of selling, distributing and/or marketing wood stains.

## JURISDICTION AND VENUE

7. Jurisdiction is based on 28 U.S.C §1332(a)(1), as this action involves a controversy between citizens of different states; namely Plaintiffs being limited liability corporations organized and existing in the State of New York, and Defendant being a corporation organized and existing in the State of New Jersey.  Moreover, the amount in controversy, exceeds the jurisdictional threshold of this Court exclusive of interest and costs.

8. Venue is appropriate under 28 U.S.C. § 1391(b)(2) because this is the judicial district in which a substantial part of one or more of the events giving rise to the claims occurred and in which a substantial amount of property that is the subject of this action is situated.

## FACTUAL BACKGROUND

9. Plaintiffs incorporate by reference the preceding averments as though set forth at length herein.

10. At some time on or prior to May 21, 2021, Plaintiffs purchased for use at their property located at Camp Mah Kee Nac at 6 Hawthorne Road in Lenox, Massachusetts (hereinafter "the subject property"), containers of stain that were designed, manufactured, distributed, and sold into the stream of commerce by Benjamin Moore (hereinafter "subject stain products").

11. On or before May 21, 2021, Plaintiffs used rags, brushes, rollers and/or other materials to apply the subject stain products at the subject property.

12. At all relevant times, the subject stain products were used in a manner reasonably expected and foreseeable to Benjamin Moore.

13. At all times relevant, the subject stain products were used for their intended purpose in a manner reasonably foreseeable to Benjamin Moore.

14. Subsequent to the application of Defendant's stain products, after the cleanup of the materials used to apply the subject stain products, and on the dates referenced above, a fire occurred at the subject property.

15. The fire was directly and proximately caused by the spontaneous combustion of materials containing the Benjamin Moore stain products, and as further and more fully described below.

16. The fire resulted in severe damage to the real and personal property of Plaintiffs and caused them to vacate the subject premises for a reasonable period of time while repairs were made and their property was restored to pre-fire conditions, and caused other consequential and incidental damages, including clean-up costs, repairs, and other associated expenses and losses.

17. As a direct and proximate result of the aforementioned defects, Plaintiffs sustained the damages described herein in an amount well in excess of $75,000.00.

18. At all relevant times hereto, Defendant was engaged in the business of designing, formulating, manufacturing, distributing, testing, packaging, marketing, labeling and/or selling and placing into the stream of commerce the subject stain products at issue in this case.

19. Plaintiffs were the intended users/consumers of the subject stain products.

20. Defendant expected that the subject stain products would reach users and consumers thereof without any material change in their condition or design.

21. The subject stain products reached users and/or consumers without any material change in their condition or design.

22. The subject stain products were not modified, changed, altered or abused by Plaintiffs or other users at the subject property prior to or during their use.

23. Defendant knew and intended that their stain products would be used by members of the general public, and knew of the specific uses, purposes and requirements for which said subject stains would be utilized.

24. The subject stain products were defective and unreasonably dangerous and/or hazardous in design as they lacked proper and adequate warnings, instructions and/or advices as to how to properly use, handle, dispose of and store materials exposed to or affected by the subject stain products.

25. Further, the subject stain products were defective and unreasonably dangerous for the ordinary and intended use of the product in the following particular aspects:

    (a) failed to properly and safely eliminate the avoidable danger of self-heating and/or spontaneous combustion;

    (b)    contained the defective, dangerous and hazardous propensity of self-heating and/or spontaneous combustion if materials used in the application of the aforementioned product were not properly disposed of and/or discarded;

    (c)    failed to adequately warn Plaintiffs and other consumers or users as to the susceptibility to self-heating and spontaneous combustion;

    (d)    failed to provide Plaintiffs and other consumers or users of the subject stain products with adequate information, instructions or warnings concerning the safe disposal and/or storage of materials exposed to or affected by the product and byproducts; and/or

    (e)    failed to provide Plaintiffs and other consumers or users of the subject stain products with adequate and conspicuous warnings concerning the safe disposal and/or storage of materials exposed to or affected by the product and byproducts of the subject stain products, which possess the dangerous and/or hazardous propensity for self-heating and/or spontaneous combustion.

26. Defendant has and had a duty to design its product with reasonable care so as to eliminate dangers that are avoidable; to eliminate unreasonable dangers and to adequately warn of dangers that are foreseeable.

27. The design, formulation, manufacturing, distribution, testing, packaging, marketing, labeling and/or sale of the subject stain products with the aforementioned defects and/or inadequacies in warnings made the subject stain products defective and unreasonably dangerous for their intended use.

28. At all times material hereto, the subject stain products designed, formulated, manufactured, distributed, packaged, marketed, tested, labeled and/or sold by Defendant were used for the purpose and in the manner intended and/or expected by Defendant, and/or in a manner reasonably foreseeable by Defendant.

29. The defective and dangerous condition of the subject stain products proximately caused the fire to occur at the subject property, which resulted in damages to Plaintiffs.

## COUNT I
## <u>NEGLIGENCE</u>

30. Plaintiffs incorporate herein by reference the foregoing paragraphs as though same were fully set forth at length.

31. Benjamin Moore had a duty to exercise reasonable care in the design, formulation, manufacture, distribution, testing, warning, labeling, packaging and instruction and/or sale of the subject stain products, including a duty to ensure that the products did not expose users or consumers, such as Plaintiffs, to an unreasonable risk of harm and/or danger and that any unreasonable hazard and/or danger associated with the subject stain products were properly and adequately warned against.

32. Benjamin Moore owed Plaintiffs and other users or consumers of the subject stain products a duty to act with reasonable care in the design and manufacture of the subject stain products, to provide a reasonably safe product and eliminate avoidable dangers such as the unreasonably dangerous and hazardous propensity for self-heating and/or spontaneous combustion.

33. Benjamin Moore also owed Plaintiffs and other users and consumers of the subject stain products a duty to provide adequate warnings and/or instruction concerning safe disposal and/or storage of materials exposed to or affected by the subject stain products, including byproducts thereof, produced during ordinary and intended use.

34. Benjamin Moore breached its duties of care to Plaintiffs and was negligent in:

   (a) designing, manufacturing, formulating, distributing, marketing, labeling and/or selling the aforementioned subject stain products that was and are unreasonably dangerous and/or hazardous;

   (b) designing, manufacturing, formulating, distributing, marketing, labeling and/or selling the aforementioned subject stain products and failing to

       eliminate the avoidable danger of self-heating and/or spontaneous combustion;

(c) failing to conform its conduct in designing, manufacturing, formulating, distributing, marketing, labeling and/or selling the aforementioned subject stain products, when it knew, or should have known, that its products contained the dangerous and hazardous propensity of self-heating and/or spontaneous combustion if materials used in the application of the aforementioned products were not properly disposed of and/or discarded;

(d) failing to properly offer consumers, such as Plaintiffs, a less-hazardously designed and/or formulated product that would perform comparably to the actual product sold without their inherent damages (including their propensity to self-heat / spontaneously combust); and/or alerting consumers to comparative risks and benefits;

(e) failing to adequately warn Plaintiffs and other consumers or users that the subject stain products and byproducts thereof were susceptible to self-heating and spontaneous combustion;

(f) failing to provide Plaintiffs and other consumers or users of the subject stain products with adequate information, instructions or warnings concerning the safe disposal and/or storage of materials exposed to or affected by the product and byproducts;

(g) failing to provide Plaintiffs and other consumers or users of the subject stain products with adequate and conspicuous warnings concerning the safe disposal and/or storage of materials exposed to or affected by the product and byproducts of the subject stain products, when it knew or should have known dangerous and/or hazardous propensity of the subject stain products for the self-heating and/or spontaneous combustion and the safe disposal and/or storage of materials exposed to or affected by the product and byproducts;

(h) failing to provide, establish, and/or follow proper and adequate controls so as to avoid the problems enumerated in the subparagraphs above;

(i) failing to perform the above measures in conformity with the prevailing and safe industry and governmental specifications and standards;

(j) failing to adequately warn Plaintiffs and others of the dangers and hazardous conditions resulting from the careless and negligent conduct set forth in the subparagraphs above;

(k) failing to retain, employ, and/or contract with adequate and proper individuals or entities to undertake the measures set forth in the subparagraphs above; and/or

(l) failing to properly communicate with and/or train the individuals or entities retained, employed or contracted with to undertake the measures set forth in the subparagraphs above.

35. Benjamin Moore owed Plaintiffs a number of duties and breached said duties.

36. As a direct and proximate result of the negligence and carelessness of Benjamin Moore, Plaintiffs sustained and incurred damage to their property and the imposition of additional expenses and losses in an amount well in excess of $75,000.00.

37. As a direct and proximate result of the negligence and carelessness of Benjamin Moore, Plaintiffs suffered the loss of the use and enjoyment of their property, and possible loss of business income.

**WHEREFORE**, Plaintiffs demand judgment in their favor and against Defendant Benjamin Moore, for damages, in an amount in excess of $75,000.00, plus interest, costs, attorney's fees, delay damages, and such other relief as the Court deems appropriate under the circumstances.

## COUNT II
## BREACH OF IMPLIED WARRANTY

38. Plaintiffs incorporate herein by reference the foregoing paragraphs as though same were fully set forth at length.

39. At the time Benjamin Moore designed, manufactured, formulated, marketed, distributed, labeled and/or sold the subject stain products, Benjamin Moore knew of the use for which the product was intended, and impliedly warranted the product to be of merchantable quality and safe and fit for such use.

40. Contrary to such implied warranties, the subject stain products were not of merchantable quality and were not fit and safe for their intended use because they were defective in design as Benjamin Moore failed to properly warn users or consumers that the products and byproducts were susceptible to self-heating and spontaneous combustions and as to the safe means of disposal and/or storage of materials exposed to or affected by the products and byproducts.

41. Contrary to such implied warranties, the subject stain products were not of merchantable quality and fit and safe for their intended use because they had a dangerous self-heating characteristic that would expose the user and nearby parties to an unreasonable risk of fire and injury.

42. Benjamin Moore breached its implied warranty of merchantability as set out in Mass. Gen. Laws, Chapter 106, Section §2-314 in that the product was not fit for the ordinary uses for which the product was used.

43. At the Plaintiffs' property, the subject stain products functioned improperly in the absence of abnormal unforeseeable use and reasonable secondary causes.

44. Plaintiffs' damages occurred as a direct and proximate result of Benjamin Moore's breach of their implied warranty of merchantability as set out in Mass. Gen. Laws, Chapter 106, Section §2-314.

45. As a natural and foreseeable consequence of this breach, the fire occurred at the subject property, which resulted in Plaintiffs' damages.

46. As a direct and proximate result of the aforementioned breach, Plaintiffs sustained and incurred damage to their property and the imposition of additional expenses in an amount in excess of $75,000.00.

47. As a direct and proximate result of the aforementioned breach, Plaintiffs suffered the loss of the use and enjoyment of their property, and possible loss of business income.

**WHEREFORE**, Plaintiffs demand judgment in their favor and against Defendant Benjamin Moore, for damages, in an amount in excess of $75,000.00, plus interest, costs, attorney's fees, delay damages, and such other relief as the Court deems appropriate under the circumstances.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues triable by right to jury.

Respectfully Submitted,

**Plaintiffs**
**CampGroup, LLC;**
**Mah-Kee-Nac Real Estate Co., LLC; and**
**Mah-Kee-Nac Operating Co., LLC;**
By their attorney,

*/s/ Jason E. Cohn*

Jason E. Cohn, Esquire
B.O.B. #638259
COHN, RIOS & ANGLIN
2 Center Plaza, 8th Floor
Boston, MA 02108
Phone:  (617) 723-1720
Fax:  (617) 557-5677
Email:  jec@cohnriosanglin.com